## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JAN VENTER-BARKLEY**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 09-CV-2064 KHV/DJW** |
| | ) | |
| **PITTSBURG STATE UNIVERSITY**, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF MS. VENTER-BARKLEY'S
## RESPONSE TO DEFENDANT'S MOTION TO DISMISS

COMES NOW, Plaintiff, Ms. Jan Venter-Barkley by and through its attorneys R. Mark Nasteff, Jr. and Mitchell, Kristl & Lieber, P.C. and in response to Defendant Pittsburg State's Motion to Dismiss under Federal Rule of Procedure 12(b)(1) an 12(b)(6) states as follows:

### Nature of the Case

At issue is whether Pittsburg State University is cloaked with Eleventh Amendment immunity for its actions in violation of Title II and Title V of the Americans With Disabilities Act ("ADA").

### Procedural History

Ms. Venter Barkley filed a two-count Complaint seeking redress for harm to her relating to her treatment at the hands of Pittsburg State University.  The first count seeks monetary relief and "other appropriate relief", which could include reinstatement for discriminatory actions taken by Pittsburgh State University under Title II of the ADA.  The second count seeks monetary relief and "other appropriate relief", which could include reinstatement for discriminatory actions taken by Pittsburgh State University under Title II of the ADA.  In response to the Complaint Defendant Pittsburg State University filed the instant motion.

**Standard of Review**

Defendant correctly cites the standard of scrutiny under Rule 12(b)(6) which is that "dismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks 'enough facts to state a claim to relief that is plausible on its face.' " *United States ex. Rel. Conner v. Salina Reg'l Health Center*, 543 F.3d 1211, 1217 (10th Cir. 2008)(quoting, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Further, a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction necessarily implicates a review of the allegations in the complaint. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)

**STATEMENT OF FACTS**

The facts stated in the light most favorable to Ms. Venter-Barkley are as follows:

1.    Ms. Venter-Barkley was employed by Defendant Pittsburg State;

2.    Pittsburg State University is a federally funded state university controlled by its CEO President Dr. Tom W. Bryant;

3.    In the Fall of 2006 Ms. Venter-Barkley made known to her department chair that Ms. Venter-Barkley suffered from a disability;

4.    Ms. Venter-Barkley's disability caused her to take a brief leave of absence in 2006;

5.    Upon her return from leave, Ms. Venter Barkley began to experience a pattern of behavior designed to cause her to leave her employment;

6.    For a period of almost two years Ms. Venter-Barkley was subjected to regular mistreatment and discrimination due to her disability;

7.      After raising legitimate complaints regarding her treatment by Pittsburg State University, Ms. Venter-Barkley was coerced, threatened and intimidated to attempt to keep her from seeking redress for her mistreatment.

8.      Ms. Venter-Barkley exhausted her administrative remedies prior to filing this lawsuit.

## ARGUMENT

**Pittsburg State University Is Not Immune From Suit Under Titles II and V of the Americans With Disabilities Act**

Defendant correctly points out that the United States Supreme Court in *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001) held that The Eleventh Amendment to the United States Constitution bars suit against a state under Title I of the Americans with Disabilities Act.  However, the Second Circuit refused to allow the State University of New York to hide behind the Eleventh Amendment and allowed a suit to proceed under Title II. *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98 (2nd Cir. 2001).   Moreover, Title V redresses retaliation and states as follows:

(a) Retaliation

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

(c) Remedies and procedures

The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively.

42 U.S.C.A. § 12203

While Ms. Venter-Barkley concedes that the *Garrett* opinion is a hurdle. In light of the 2008 amendments to the Americans With Disabilities Act as well guidance from the Second Circuit and decisions within the Tenth Circuit the cause of action as plead should withstand scrutiny at this juncture and proceed.

With regard to the 2008 amendments the Congress clearly stated its intention to countermand years of judicial restrictions of the Americans With Disabilities Act. In fact, the congressional record speaks volume regarding Congress' intent in amending the ADA. The legislative history is set forth in the code as follows:

12101. Findings and Purpose

(a) Findings

The Congress finds that—

(1)     physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;

(2)     historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(3)     discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(4)      unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;

(5)   individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

(6)      census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;

(7)      the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and

(8)      the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

(b) Purpose

It is the purpose of this chapter—

(1)      to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2)      to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3)      to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and

(4)      to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

…

(The Congress made the following record)

Findings and Purposes

Pub.L. 110-325, § 2, Sept, 25, 2008, 122 Stat. 3553, provided that:

"(a) Findings.--Congress finds that—

"(1) in enacting the Americans with Disabilities Act of 1990 (ADA) [Pub.L. 101-336, July 26, 1990, 104 Stat. 327, which enacted this chapter and 47 U.S.C.A. § 225, amended 29 U.S.C.A. § 706, and 47 U.S.C.A. §§ 152, 221, and 611; for complete classification, see Short Title note set out under this section and Tables], Congress intended that the Act [this chapter] 'provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities' and provide broad coverage;

"(2) in enacting the ADA, Congress recognized that physical and mental disabilities in no way diminish a person's right to fully participate in all aspects of society, but that people with physical or mental disabilities are frequently precluded from doing so because of prejudice, antiquated attitudes, or the failure to remove societal and institutional barriers;

"(3) while Congress expected that the definition of disability under the ADA would be interpreted consistently with how courts had applied the definition of a handicapped individual under the Rehabilitation Act of 1973 [Pub.L. 93-112, Sept. 26, 1973, 87 Stat. 355, which is principally classified to chapter 16 of Title 29, 29 U.S.C.A. § 701 et seq.; for complete classification, see Short Title note set out under 29 U.S.C.A. § 701 and Tables], that expectation has not been fulfilled;

"(4) the holdings of the Supreme Court in Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999) and its companion cases have narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect;

"(5) the holding of the Supreme Court in Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002) further narrowed the broad scope of protection intended to be afforded by the ADA;

"(6) as a result of these Supreme Court cases, lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities;

"(7) in particular, the Supreme Court, in the case of Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002), interpreted the term 'substantially limits' to require a greater degree of limitation than was intended by Congress; and

"(8) Congress finds that the current Equal Employment Opportunity Commission ADA regulations defining the term 'substantially limits' as 'significantly restricted' are inconsistent with congressional intent, by expressing too high a standard.

"(b) Purposes.--The purposes of this Act [ADA Amendments Act of 2008, Pub.L. 110-325, Sept. 25, 2008, 122 Stat. 3553, enacting 42 U.S.C.A. §§ 12103 and 12205a, amending this section, and 29 U.S.C.A. § 705, 42 U.S.C.A. §§ 12102, 12111 to 12114, 12201, and 12210, redesignating 42 U.S.C.A. §§ 12206 to 12213, and enacting provisions set out as notes under this section and 29 U.S.C.A. § 705] are—

"(1) to carry out the ADA's objectives of providing 'a clear and comprehensive national mandate for the elimination of discrimination' and 'clear, strong, consistent, enforceable standards addressing discrimination' by reinstating a broad scope of protection to be available under the ADA;

"(2) to reject the requirement enunciated by the Supreme Court in Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999) and its companion cases that whether an impairment substantially limits a major life activity is to be determined with reference to the ameliorative effects of mitigating measures;

"(3) to reject the Supreme Court's reasoning in Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999) with regard to coverage under the third prong of the definition of disability and to reinstate the reasoning of the Supreme Court in School Board of Nassau County v. Arline, 480 U.S. 273 (1987) which set forth a broad view of the third prong of the definition of handicap under the Rehabilitation Act of 1973;

"(4) to reject the standards enunciated by the Supreme Court in Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002), that the terms 'substantially' and 'major' in the definition of disability under the ADA 'need to be interpreted strictly to create a demanding standard for qualifying as disabled,' and that to be substantially limited in performing a major life activity under the ADA 'an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives';

"(5) to convey congressional intent that the standard created by the Supreme Court in the case of Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002) for 'substantially limits", and applied by lower courts in numerous decisions, has created an inappropriately high level of limitation necessary to obtain coverage under the ADA, to convey that it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their

obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis; and

"(6) to express Congress' expectation that the Equal Employment Opportunity Commission will revise that portion of its current regulations that defines the term 'substantially limits' as 'significantly restricted' to be consistent with this Act, including the amendments made by this Act [ADA Amendments Act of 2008, Pub.L. 110-325, Sept. 25, 2008, 122 Stat. 3553, enacting 42 U.S.C.A. §§ 12103 and 12205a, amending this section, and 29 U.S.C.A. § 705, 42 U.S.C.A. §§ 12102, 12111 to 12114, 12201, and 12210, redesignating 42 U.S.C.A. §§ 12206 to 12213, and enacting provisions set out as notes under this section and 29 U.S.C.A. § 705] ."

[Pub.L. 110-325 and the amendments effective January 1, 2009)

[emphasis added]

The purpose of the amendment clearly appears to be Congress' intention to see that its legislation has the effect of righting the inequities that befall persons with disabilities.  As such, the State should not be able to hide behind the cowardice of the Eleventh Amendment rather than addressing its shortcomings in a meaningful way.

While the Court's have upheld the general rule that the Eleventh Amendment grants the states absolute immunity from suits brought by individuals in federal court. *Edelman v. Jordan,* 415 U.S. 651, 662-63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). It guarantees that "nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trustees of Uni. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).  However, there are three well-established exceptions to the bar. First, the States may consent to suit, waiving immunity. Second, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. Finally, under the doctrine announced in *Ex Parte Young,* an individual seeking only prospective injunctive relief for ongoing violations of federal law may bring suit against state officials in federal court. *Sanders v. Kansas Dept. of Social and Rehabilitative Resources*, 317 F.Supp.2d

1233 (D. Kan 2004).  Moreover, in addition to those stated reasons, the Tenth Circuit has held that "by accepting federal financial assistance as specified in 42 U.S.C. § 2000d-7, states and state entities waive sovereign immunity from suit." *Robinson v. Kansas,* 295 F.3d 1183, 1190 (10th Cir.2002) (finding Kansas had so waived).

On the face of the pleadings, Ms. Venter-Barkley has established a waiver under *Robinson*. Additionally, the congressional record set forth above sets forth a plethora of findings that shed light on the abrogation issue which will certainly work its way to the Supreme Court anew.

Lastly, Ms. Venter-Barkley's Complaint seeks relief in non-monetary forms, reinstatement, which would not be barred as a form of recovery under the eleventh Amendment. *Swart v. State of Colorado Dept. of Corrections*, 2009 WL 230699 (D.Colo.,2009) (Plaintiff's ADA claim was not barred to the extent that she seeks relief other than money damages).

## CONCLUSION

For the reasons set forth above, Defendant Pittsburg State University is not entitled to immunity under the Eleventh Amendment to the United States Constitution from civil suit pursued under Titles II and V of the Americans with Disabilities Act.  If this Court deems that the pleading is not clear on its face, Plaintiff respectfully requests leave to amend the Complaint to clear up any ambiguity in the claims being proffered by Plaintiff.

Respectfully submitted,

MITCHELL, KRISTL & LIEBER, P.C.

  /s/ R. Mark Nasteff, Jr.
R. Mark Nasteff, Jr., Esquire, KS #18940
1220 Washington, Third Floor
Kansas City, Missouri 64105
(816) 472-7788
Telecopier Number: (816) 472-1956

9

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a true and correct copies of the above and foregoing document was sent via ECF, this 9th day of April 2009.

Michael C. Leitch
Office of the Attorney General
Memorial Building, 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612
*Attorneys for Pittsburg State University*

   /s/ R. Mark Nasteff
ATTORNEY FOR APPELLANT